UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **GERALD RAY LEWIS** | : | **CIVIL ACTION NO. 2:11-cv-1315** |
| **LA DOC #516910** | | **SECTION P** |
| | | |
| **VS.** | : | **JUDGE MINALDI** |
| | | |
| **WARDEN, LOUISIANA STATE** | : | **MAGISTRATE JUDGE KAY** |
| **PENITENTIARY** | | |

## REPORT AND RECOMMENDATION

Before the court is an application for the writ of habeas corpus filed by *pro se* petitioner Gerald Ray Lewis (hereafter, "petitioner"). Doc. 1; *see also* doc. 3. Petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections, and he is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons, **IT IS RECOMMENDED** that the application be **DENIED** and **DISMISSED WITH PREJUDICE.**

### I. FACTS & PROCEDURAL HISTORY

#### A. Conviction & Direct-Appeal

On March 17, 2005, petitioner was indicted in the 14th Judicial District Court in and for Calcasieu Parish, Louisiana, for one count of first-degree murder and one count of second-degree murder. R. at 1, 3. The counts were based on two separate incidents. 2d Supp. R. at 41. Count one charged petitioner with the first-degree murder of John Pappillion during an armed robbery. R. at 36. Count two charged petitioner with the second-degree murder of Bobby Pete during a

dispute in the Calcasieu Parish prison over trading commissary items.  *Id.*; *see also* 2d Supp. R. at 42.  Petitioner pleaded not guilty to both charges.  R. at 9.

On March 7, 2006, the State amended the indictment to reduce count one to second-degree murder.  R. at 18.  Petitioner pleaded not guilty to the amended charge.  *Id.*  The court also allowed petitioner's attorney to withdraw at that time and appointed attorney Shane Hinch to represent petitioner.  *Id.*

Petitioner's trial began on November 6, 2006.  R. at 18–21.  Petitioner first filed a motion to sever the trials for the offenses which the court denied.  *Id.*  The court then selected the jury, who began hearing evidence on November 8, 2006.  R. at 27.  On November 10, 2006, the jury found petitioner guilty of the second-degree murder of Bobby Pete.  R. at 32.  As to the murder of John Papillion, the jury returned a responsive verdict of manslaughter.  *Id.*  The jury reached both verdicts by a vote of 10 to 2.  *Id.*

The court sentenced petitioner on December 8, 2006.  R. at 34.  Before sentencing, petitioner filed a motion for judgment of acquittal and a motion for a new trial, both of which were denied.  *Id.*  The court then sentenced petitioner to 40 years imprisonment for the manslaughter conviction.  *Id.*  For the second-degree murder conviction, petitioner was sentenced to life imprisonment.  *Id.*  Both sentences were imposed without benefit of parole, probation, or suspension of sentence.  *Id.*  Additionally, the court ordered the sentences to run consecutively.  *Id.*

Petitioner timely filed a direct appeal in the Louisiana Third Circuit Court of Appeal. R. at 529–30, 547–56.  New counsel, Carey J. Ellis, III, was appointed to petitioner's case via the Louisiana Appellate Project.  R. at 547.  In addition to the two assignments of error argued in

Mr. Ellis's appellate brief, petitioner supplemented the appeal with three *pro se* assignments of error.  2d Suppl. R. at 43.

On October 31, 2007, the Third Circuit affirmed the conviction, but remanded to the trial court with instructions to delete the denial of parole eligibility on the manslaughter conviction. *See State of Louisiana v. Lewis*, 966 So. 2d 170 (La. App. 3 Cir. 2007); *see also* 2d Supp. R. at 39–62.  Petitioner then filed an application for a writ of certiorari in the Louisiana Supreme Court.  2d Supp. R. at 36.  On May 9, 2008, his writ application was denied.  *State of Louisiana v. Lewis*, 980 So. 2d 688 (La. 2008).  Petitioner did not seek further review in the United States Supreme Court.

**B.  Post-Conviction Relief**

On April 21, 2009, petitioner filed a *pro se* application for post-conviction relief in the 14th Judicial District Court.  2d Supp. R. at 90–138.  He later supplemented the application with additional claims.  2d Supp. R. at 139–151.  On August 31, 2009, the trial judge denied petitioner's application, noting that "a review of the record in this matter reveals that none of [petitioner's] claims are substantiated by the evidence." 2d Supp. R. at 152.

On November 4, 2009, petitioner filed an appeal to the post-conviction relief denial in the Louisiana Third Circuit.  2d Supp. R. at 153.  On April 26, 2010, the Third Circuit denied relief.  Doc. 1, att. 1, p. 12.  Petitioner then filed a writ application in the Louisiana Supreme Court, which was denied on June 3, 2011.  *See State ex rel. Lewis v. State*, 63 So. 3d 1010–11 (La. 2011).

**C.  Habeas application**

On July 8, 2011, petitioner filed his habeas application in this court.  Doc. 1.  Petitioner asserts the following claims for relief:

1) There was insufficient evidence to convict him of manslaughter and second degree murder;

2) The trial court erred when it failed to grant his motion to sever the offenses and order separate trials;

3) The sentence imposed was excessive and the trial court failed to give justification for the excessive sentences;

4) The indictment was not brought in open court by the grand jury;

5) The sentence for manslaughter is constitutionally infirm because the trial judge sentenced him without eligibility for parole, probation or suspension of sentence; and

6) He was denied effective assistance of counsel in the trial court and at the appellate level.

Doc. 1, att. 1.  Claims one through five are identical to those petitioner raised on direct appeal. 2d Supp. R. at 39–62. Similarly, all of petitioner's ineffective-assistance claims were raised in his state-court application for postconviction relief.  2d. Supp. R. at 99–100; 143–151; *see also* doc. 1, att. 1, pp. 3–5.

## II. LEGAL STANDARDS ON HABEAS REVIEW

Federal courts of the United States have jurisdiction to entertain applications for writs of habeas corpus on behalf of a person in State custody only if that person "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Because the state district court adjudicated petitioner's claims "on the merits," this court reviews the state court's adjudication under the deferential standard of 28 U.S.C. § 2254(d).[1] *Corwin v. Johnson*, 150 F.3d 467, 471 (5th Cir. 1998).  The statute provides that when the state

---

[1] In this case, the state courts denied petitioner relief on substantive rather than procedural grounds.  The appellate court addressed petitioner's first five claims in an unpublished opinion regarding his direct appeal.  2d Supp. R. at 39–62.  Petitioner's ineffective-assistance claims were all summarily denied by the trial court in its order denying postconviction relief, which noted only that "a review of the record in this matter reveals that none of [petitioner's] claims are substantiated by the evidence."  2d Supp. R. at 152.  Accordingly, all of petitioner's claims have previously been denied on the merits. *See Harrington v. Richter*, 131 S.Ct. 770, 784–85 (2011) (holding that no statement of reasons is required for an adjudication to be "on the merits").

court has reached the merits of a constitutional claim, a writ of habeas corpus shall not be granted with respect to that claim unless the state court's adjudication resulted in a decision that was either: (1) contrary to clearly established federal law or involved an unreasonable application of that law; or (2) based on an unreasonable determination of the facts in light of the evidence before the state court.  28 U.S.C. § 2254(d).

The first standard—*i.e.* whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law—applies to questions of law as well as mixed questions of law and fact.  A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard.  *Early v. Packer*, 537 U.S. 3, 9 (2002) (per curiam).  The decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Richter*, 131 S. Ct. at 784.  A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a [contrary] result . . . ."  *Bell v. Cone*, 543 U.S. 447, 452–53 (2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)) (internal quotation marks omitted).  In order for a state court's application of federal law to be unreasonable, the application must be more than simply erroneous, but rather so incorrect as to be objectively unreasonable.  *Dilosa v. Cain*, 279 F. 3d 259, 262 (5th Cir. 2002).

The second standard—*i.e.* whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence —applies to questions of fact.  It is insufficient for a petitioner show that the state court erred in its factual determination; he must demonstrate that the factual determination was objectively unreasonable, which is a

"substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the petitioner must show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 546 U.S. 333, 341 (2006).

### III. LAW & ANALYSIS

The application was timely filed and the claims were properly exhausted.[2]  Accordingly, the court will weigh the merits of petitioner's claims based on the standards set forth above.

#### A. Insufficiency of the Evidence

As he did on direct appeal, petitioner argues that there was insufficient evidence to support his convictions. Doc. 1, att. 1, pp. 13–18.

"Insufficiency of the evidence can support a claim for federal habeas corpus relief only where the evidence, viewed in the light most favorable to the prosecution, is such that no rational finder of fact could have found the essential elements of the crime beyond a reasonable doubt." *Young v. Guste*, 849 F.2d 970, 972 (5th Cir. 1988) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). The question is "not whether [the federal district court is] personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors

---

[2] The Louisiana Supreme Court denied petitioner's writ application on May 9, 2008.  Because he did not seek review in the United States Supreme Court, his conviction became final 90 days later on August 7, 2008.  *See* 28 U.S.C. § 2244(d)(1)(A); *Roberts v. Cockrell*, 319 F.3d 690, 693–95 (5th Cir. 2003).  Petitioner then had one year—or until August 7, 2009—to seek habeas review in federal court.  28 U.S.C. § 2244(d)(1)(A).  However, the limitations period was tolled between April 21, 2009, and June 3, 2011, the period during which petitioner's postconviction relief application was pending in the State courts.  28 U.S.C. § 2244(d)(2).  Because less than one year of untolled time elapsed before petitioner filed in federal court on July 8, 2011, petitioner's application was timely filed under the meaning of 28 U.S.C. § 2244(d)(1).

Furthermore, petitioner has previously raised all of his claims in state court. *See supra* Part I.C. Accordingly, his claims were properly exhausted under 28 U.S.C. § 2254(b)(1)(A).

reached." *Roehler v. Borg,* 945 F.2d 303, 306 (9th Cir. 1991).  Determinations of factual issues made by the state trial court shall be presumed to be correct unless a petitioner can rebut the findings by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Deference to the trier of fact is appropriate because the trier has undertaken the responsibility to "fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 307.  In evaluating petitioner's claims, this court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster,* 131 S.Ct. 1388, 1398 (2011).

### 1.  Manslaughter Conviction

Petitioner's first conviction involves the shooting death of John Pappillion (hereafter, "Pappillion") in Lake Charles, Louisiana on October 23, 2001.  2d Supp. R. at 41.  The testimony adduced at trial, especially that of Arthur McNeil (hereafter, "McNeil"), established that, on the night in question, petitioner was driving a vehicle occupied by three other men: Jason Thomas (hereafter, "Thomas") who sat in the front passenger seat, McNeil who sat in the back seat on the passenger's side, and Pappillion who sat in the back seat on the driver's side. *Id.* Pappillion was to purchase crack cocaine from petitioner for the second time that day. *Id.*

After ignoring Pappillion's request to go home, petitioner drove the vehicle to an area ballpark and stopped. *Id.* When Pappillion reached into his pocket to grab some money to complete the drug deal, Thomas brandished a firearm, pointed it at Pappillion, and demanded that Pappillion give up his wallet. *Id.*; see also R. at 287.  Pappillion attempted to escape but petitioner delayed him by grabbing onto his shirt.  2d Supp. R. at 41–42.  Thomas then shot Pappillion. *Id.* at 42.  Petitioner and Thomas then got out of the vehicle and took Pappillion's wallet before driving away. *Id.*

After hearing the evidence, the jury returned a responsive verdict of manslaughter.[3]  *Id.* at 44–45.  Because the facts of the incident do not fit the definition of manslaughter,[4] the jury appears to have reached a compromise verdict.  2d Supp. R. at 44.

Petitioner argues that the State did not present sufficient proof for his manslaughter conviction.  Doc. 1, att. 1, p. 16.  Specifically, he argues that the State did not prove that he had the requisite intent to or knowledge to be convicted as a principal.  *Id.*  He states that

> [t]here was no showing that [petitioner] had a gun, shot a gun, knew about a gun or participated in the shooting.  There was no evidence adduced to sufficiently prove that [petitioner] knew of an armed robbery, participated in an armed robbery or aided, counseled or procured Jason Thomas to commit armed robbery or murder.

*Id.*

This argument lacks merit.  Despite the fact that petitioner himself was not the shooter, it was reasonable for the jury to conclude that that all of the elements for second-degree murder were satisfied insofar as petitioner was a principal to the armed robbery during which Pappillion was killed.  A defendant is guilty of second-degree murder in Louisiana when a human being is

---

[3] A responsive verdict of manslaughter is legislatively authorized when the defendant is charged with second-degree murder.  LA. CODE CRIM. PROC. art. 814(A)(3).

[4] Manslaughter is defined by Louisiana Revised Statute Section 14:31, which states, in pertinent part, as follows:

    A. Manslaughter is:

        (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. . . .

        (2) A homicide committed, without any intent to cause death or great bodily harm.
            (a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person.

La. R.S. § 14:31.  As noted by the appellate court, nothing in the facts suggests sudden-heat of passion and there is no question the homicide occurred during the perpetration of an armed robbery, which is a felony enumerated in article 30.1. 2d Supp. R. at 44.  Accordingly, the facts here do not indicate manslaughter.

killed and the defendant is engaged in the perpetration or attempted perpetration of armed robbery, regardless of the defendant's intent to kill or inflict great bodily harm.  *See* La. R.S. § 14:30.1(A)(2).  Louisiana law also provides that "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."  La. R.S. § 14:24 (2014).  "A person who aids and abets another in a crime is just as liable as the person who directly commits it, although he may be convicted of a higher or lower degree of the crime, depending upon the mental element proven at trial."  *State v. Freeman*, 801 So. 2d 578, 582 (La. App. 3 Cir. 2001) (citing *State v. Watson,* 397 So.2d 1337 (La.1981)).  A verdict for a lesser offense is permissible so long as the evidence supports either the verdict given or the original charge.  *State ex rel. Elaire v. Blackburn*, 424 So. 2d 246, 251–52 (La. 1982).

In order to find petitioner guilty of second-degree murder, the jury was required to find that petitioner was a principal to the armed robbery during which Pappillion was killed.  The jury concluded that the evidence supported such a finding, but decided to return a responsive verdict of manslaughter. This verdict was permissible because the evidence supported the original charge of second-degree murder.  *Elaire*, 424 So. 2d at 251–52.   As aptly summarized by the appellate court:

> The defendant took the stand in his own defense.  His testimony mirrored McNeil's regarding the general facts of the incident.  However, he testified that when he touched the victim, he was trying to calm him down, and that he had not planned to commit the robbery.  Thus, the state's case on this count rested upon the jury's determination of which eyewitness it found more credible.  Apparently, the jury found McNeil's testimony, as a whole, more believable than the defendant's.
>
> ***

> [T]he evidence showed that the defendant acted as a principal to Pappillion's murder. He drove the car to a relatively isolated location, despite the victim's request to go home; he grabbed the victim's shirt to prevent his escape; next he secured the victim's wallet and took money from it.  From this evidence, the jury could reasonably infer that defendant intentionally participated in the robbery-murder.

2d Supp. R. at 46–47.

We agree. A rational trier of fact could (and did) conclude that petitioner was complicit in the armed robbery during which Pappillion was killed.  The jury's verdict was objectively reasonable in light of the evidence before it, and therefore the verdict cannot be overturned under 28 U.S.C. § 2254(d)(2).

### 2.  Second-Degree Murder Conviction

Petitioner's second conviction involves the death of Bobby Pete (hereafter, "Pete") following a dispute in the Calcasieu Parish Correctional Center over trading commissary items. 2d Supp. R. at 42.

On the morning of January 24, 2002, Pete refused to accept his "indigent bag" from the commissary.  *Id.*  The bags, which included items such as t-shirts and hygiene products, were supplied to inmates who could not afford to purchase items from the commissary.  *Id.*  Pete had told petitioner that he would trade some of the items in his indigent bag to petitioner in return for cigarettes.  *Id.*  Pete's refusal to accept his commissary items meant that the deal was off.  *Id.*

That evening petitioner and another inmate named Nathaniel Smith (hereafter, "Smith") entered Pete's cell under pretenses of cleaning it.[5]  *Id.*   Once inside petitioner and Pete exchanged words over Pete's defaulting on the trade and a physical altercation ensued.  *Id.*

---

[5] While incarcerated petitioner served as a "tier rep," performing certain tasks in exchange for greater privileges. 2d Supp. R. at 48–49.   One of these tasks was to clean out other inmates' cells.  *Id.*  Petitioner's status as a tier rep allowed him to gain access to Pete's cell on the evening in question.  *Id.*

Petitioner and Pete traded blows and wrestled.  *Id.;* see also R. at 1664.  Pete sustained a head injury during the fight and lost consciousness.  R. at 1664–65; *see also* 2d Supp. R. at 42.

Petitioner and Smith later went back to check on Pete but he did not respond.  2d Supp. R. at 48.  The men tried to revive him by throwing cups of water on him.  *Id.*  When Pete still did not respond petitioner used the prison's intercom to inform the tower guard that something was wrong.  *Id.*  Guards determined that Pete was deceased.

An autopsy revealed that Pete died of an intra-cranial hemorrhage.   2d Supp. R. at 48.  The police conducted an investigation and interviewed all of the inmates and guards in the area of the prison where Pete was housed.  R. at 1500–08.  Petitioner's role in the incident was eventually uncovered and he was then charged with Pete's murder.  R. at 1514.

After hearing the evidence the jury found petitioner guilty of second-degree murder by a vote of 10 to 2.  In pertinent part, Louisiana's second-degree murder statute states that "[s]econd-degree murder is the killing of a human being . . . when the offender has a specific intent to kill or to inflict great bodily harm . . . ."  La. R.S. § 30.1(A)(1).  As applied to this case, the jury found that petitioner acted with specific intent to inflict great bodily harm when he fought with Pete, thus rendering petitioner guilty of second-degree murder when Pete died from his injuries sustained in the fight.

Petitioner does not dispute that he fought with Pete but argues that his conviction was not supported by the evidence.  Doc. 1, att. 1, p. 17.  He states that:

> [t]he evidence and testimony at trial consistently showed that Bobby Pete and Defendant fought.  There was not, however, sufficient evidence presented to prove that Gerald Ray Lewis intended to kill or inflict great bodily harm upon Bobby Pete.

*Id.*  Petitioner therefore argues that his conviction should be overturned and that he should be ordered discharged.  *Id.* at 17–18.

We disagree.  Based upon evidence in the record a rational trier of fact could conclude that petitioner intended to cause great bodily harm.  Kenneth Farras, the inmate occupying the cell directly under Pete's, testified at petitioner's trial.  He stated that he heard petitioner and Pete arguing over Pete's indigent bag earlier in the day.  2d Supp. R. at 48-49.  Farras also stated that he witnessed petitioner and Smith go upstairs to Pete's cell carrying cleaning equipment.  *Id.* at 49.  He stated that he heard sounds of a fight emanating from Pete's cell.  *Id.*  He further testified that he heard Smith state that he and petitioner "knocked that dude out cold," and that Smith mimicked the way Pete's eyes rolled back in his head, which drew a laugh from petitioner.  *Id.*; *see also* R. at 1608.  Farras testified that, after the fight, petitioner gave him a t-shirt with drops of blood on it and asked him to wash them out.  2d Supp. R. at 49.  Finally, Farras testified that petitioner gave him a note instructing him to keep quiet about the incident which Farras later flushed down the toilet.  *Id.*

Detective Bradley Leroy testified at trial that an inmate named Tyrone Thibodeaux (hereafter, "Thibodeaux") stated during the investigation that he witnessed petitioner and Smith beating Pete.  R. at 1509.  Thibodeaux was subpoenaed to testify at trial but when he was called to the stand he refused to answer any questions.  2d Supp. R. at 49.  Thibodeaux did identify a still image of himself from the videotaped statement he gave to investigators but he claimed not to remember telling the officers that he saw petitioner and Smith hit Pete.  *Id.*

Due to Thibodeaux's refusal to answer questions and the fact that Smith was not present at trial, the only eyewitness who testified was petitioner himself.  Petitioner admitted during his testimony that he fought with Pete and that he saw Pete hit his head on something.  2d Supp. R. at 48.  However, petitioner denied having the intent to kill Pete or seriously injure him.  *Id.*

Furthermore, he testified that Pete willingly entered the fight and that Pete only lost consciousness after Smith hit him.  *Id.*

It was rational for the jury to conclude that petitioner had the specific intent to inflict great bodily harm.  The appellate court explained that such intent may be found if the defendant intended to cause the victim to lose consciousness or suffer extreme physical pain.  2d Supp. R at 50 (citing *State v. Hampton*, 750 So.2d 867, 881 n. 10 (La. 1999)).  The jury could have determined that the state's witnesses were more credible than petitioner and decided that petitioner acted with the requisite intent to be guilty of second-degree murder. Had the jury found that petitioner lacked such intent or that Pete somehow provoked petitioner, it could have returned a responsive verdict of manslaughter.  *See* La. R.S. § 14:31; LA. CODE CRIM. PROC. art. 814(A)(3). However, the jury declined to do so.  The jury's verdict was objectively reasonable in light of the evidence, and the conviction should stand.  28 U.S.C. § 2254(d)(2).

**B.  Failure to Sever the Trials**

Petitioner's second claim, which was also presented on direct appeal, is that the trial court erred by failing to grant his motion to sever the offenses and order separate trials.  Doc. 1, att. 1, p. 18.  He states that the alleged crimes were "separate and distinct," and that having both charges tried at the same time unfairly prejudiced the jury against him.  *Id.* at 19.

In *Breeland v. Blackburn*, 786 F.2d 1239, 1240 (5th Cir. 1986), the Fifth Circuit dealt with a *habeas* challenge to a Louisiana court's denial of a motion to sever.  The court noted as follows:

> The starting point of our analysis must be emphasized. We are not concerned with the Louisiana law concerning joinder of offenses since our inquiry must be limited to appellant's rights to a fair trial under the United States Constitution. The issue before us is whether the criminal procedures to which appellant was subjected meet federal due process-fair trial standards under the Fourteenth Amendment.

*Breeland*, 786 F.2d at 1240.   The controlling principle is that "[s]everance is within the discretion of the trial court and is required only in cases of compelling prejudice." *Id.* at 1241 (quoting *United States v.  MacIntosh*, 655 F.2d 80, 84 (5th Cir. 1981).  It is the petitioner's burden to demonstrate that the joinder of offenses resulted in an unfair trial. *United States v. Holloway,* 1 F.3d 307 (5th Cir. 1993).   Furthermore, the "[t]he burden of demonstrating prejudice is a heavy one, and the ruling of the trial judge will rarely be disturbed by a reviewing court." *Breeland*, 786 F.2d at 1241 (quoting *United States v. Abshire*, 471 F.2d 116, 118 (5th Cir. 1972).

Petitioner appears to argue that having both counts tried together was in and of itself prejudicial.  This argument ignores the fact that Louisiana law allows for the joinder of offenses (LA. CODE CRIM. PROC. art. 493) and that a defendant is not entitled to severance as a matter of right.   Here the court weighed numerous statutory and jurisprudential factors and ultimately determined that the counts could be tried together.  R. at 563–74.  That decision was well within the court's discretion.

Furthermore, petitioner fails to demonstrate that he suffered actual prejudice in this case.  Of all the witnesses who testified at trial, only two testified regarding both counts:  the Calcasieu Parish coroner who examined both victims and petitioner himself.  *See* R. at 1488; 1617–35; 1639–85; and 1742.  From the record it is clear that evidence offered regarding one offense had no bearing on the other and there is no indication that the jury viewed it otherwise.  The court's jury instructions separately discussed the elements of each count and the possible verdicts thereto. R. at 508–517.  The court also specifically instructed the jury as follows:

> Be reminded that the accused is on trial for two separate counts of second-degree murder. Your determination of guilt or innocence should be entirely separate for each count. Guilt or innocence as to one count should not influence your judgment as to the defendant's guilt or innocence of the other.

R. at 516.

After review of the record, the court concludes that the state court's decision to try both counts together did not result in an unfair trial in violation of the Fourteenth Amendment. Accordingly, petitioner is not entitled to relief on this ground.

### C. Excessiveness of Sentence

Petitioner next claims that the trial court imposed excessive sentences on both convictions and failed to give justification for those sentences.

An excessive sentence claim presents a question of law on habeas review. *Leblanc v. Warden, La. Correctional Institute for Women*, 6:13-CV-2641, 2014 WL 1432003 at *8 (W.D. La. April 14, 2014) (internal citations omitted); *Davis v. Cain,* 44 F.Supp.2d 792, 798 (E.D.La.1999).  Accordingly, the petitioner must demonstrate that the sentence "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States . . . ."  28 U.S.C. § 2254(d)(1).  In *Lockyear v. Andrade*, the Supreme Court held that the clearly established law is that the Eighth Amendment only prohibits a sentence that is grossly disproportionate to the offense. 538 U.S. 63, 72–73 (2003).  Thus, the limited inquiry herein becomes whether the state court's decision was contrary to or unreasonably applied the "gross disproportionality" principle.

The "gross disproportionality" principle is "applicable only in the 'exceedingly rare' and 'extreme' case," *Lockyear*, 538 U.S. at 73 (citing *Harmelin v. Michigan,* 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)), and it "does not require strict proportionality between crime and sentence." *Ewing v. California,* 538 U.S. 11, 23 (2003) (plurality opinion).  Several factors may be considered, including the "gravity of the offense compared to the harshness of the

penalty," *Ewing*, 538 U.S. at 28, the criminal history of the defendant, *Id.* at 29–30, and the "traditional deference to legislative policy choices." *Id.* at 25–26.

Here, petitioner fails to demonstrate that the adjudication of his excessive sentence claim was contrary to or involved an unreasonable application of clearly established federal law. Although this claim was presented strictly in terms of state law on direct appeal, the appellate court's opinion applied a nearly identical analysis under Louisiana law, weighing "(1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts." 2d Supp. R. at 56 (internal citations omitted).

Regarding the 40-year sentence on the manslaughter conviction, the appellate court recognized petitioner has already received the benefit of a compromise verdict insofar as he was convicted of manslaughter but the facts indicate that he was actually a principal to second-degree murder. 2d Supp. R. at 57. Accordingly, although the trial court imposed the maximum sentence for manslaughter, this sentence was not grossly disproportionate to petitioner's actual crime. *Id.* at 57–58. We find nothing unreasonable in that determination and therefore petitioner is not entitled to relief on this ground.

The life sentence that petitioner received on the second-degree murder conviction was mandatory. *Id.* at 58. Ppetitioner's claim that this sentence is excessive is groundless. Petitioner has not identified any decision by the Supreme Court that held that a mandatory life sentence for an adult convicted of second-degree murder is unconstitutionally excessive. To the contrary, the Supreme Court has upheld a mandatory life sentences for nonviolent offenses far less severe than the murder for which petitioner was convicted. *Harmelin v. Michigan,* 501 U.S. 957 (1991) (upholding mandatory life sentence without possibility of parole for a conviction of possession more than 650 grams of cocaine, despite a lack of consideration of mitigating factors such as no

prior felonies); *Rummel v. Estelle,* 100 S.Ct. 1133 (1980) (upholding mandatory life sentence for recidivist whose third felony conviction was obtaining $120.75 by false pretenses and whose prior crimes were similar property crimes). As recognized repeatedly by federal courts in this Circuit, Louisiana's mandatory life sentence for murder is not in and of itself disproportionate to the offense. *See, e.g. Beaner v. La. State Penitentiary,* 2013 WL 4411093 at *9 (W.D. La. 2013); *Holmes. v. Tanner,* 2011 WL 5869396 at *6–*7 (E.D. La. 2011); *Taylor v. Cain,* 2007 WL 1805668 at *20–*21 (E.D. La. 2007).

Petitioner is unable to demonstrate that the adjudication of his excessive sentence claim involved an unreasonable application of clearly established Supreme Court precedent. Accordingly, he is not entitled to relief on this claim.

### D.  Failure to Read Indictment in Open Court

Petitioner next contends that his conviction is constitutionally deficient due to procedural defects regarding his indictment. Doc. 1, att. 1, p. 21.   Specifically, he states that "the minutes do not reflect that any members of a Calcasieu Parish grand jury were present during the return of the indictment, nor does it reflect that the minute clerk polled them, or that they even concurred to find a True bill on [petitioner]." *Id.*  He appears to argue that failure of nine grand jurors to be physically present during the return of the indictment is fatal to his conviction.

Petitioner misunderstands the law and misreads the record.  Under Louisiana law, "[t]he grand jury shall consist of twelve persons plus no fewer than two nor more than four alternates qualified to serve as jurors, selected or drawn from the grand jury venire."  LA. CODE. CRIM. PROC. art. 413(A). "Nine grand jurors shall constitute a quorum, and nine grand jurors must concur to find an indictment." LA. CODE CRIM. PROC. art. 435. However, there is no legal

requirement that the nine jurors who vote to indict a defendant also be physically present when the indictment is returned.

The record reflects that on March 17, 2005, nine grand jurors were present and all nine voted to indict.  *See* Supp. R. at 2–5.  The grand jury's foreperson and one other grand juror were present in court when the indictment was returned.  *See* R. at 1–3.  Thus, the indictment was valid and petitioner can raise no claim to its constitutionality.  In any event, petitioner waived any objection to any perceived irregularities in the grand jury proceedings by failing to object via a pretrial motion to quash the indictment.  *State v. Deloch*, 684 So. 2d 249 (La. 1996).

### E.  Failure to Grant Parole on the Manslaughter Sentence

Petitioner next argues that his sentence for manslaughter is constitutionally infirm because the trial judge sentenced defendant without eligibility for parole, probation, or suspension of sentence.  Doc. 1, att. 1, pp. 23–24.

Petitioner successfully urged this ground for relief on direct appeal.  *See* 2d Supp. R. at 42–43.  The state appellate court amended petitioner's manslaughter sentence to include parole eligibility.  *Id.*  Accordingly, the court need not address this ground for relief because the state appellate court has already corrected this error.

### F.  Ineffective Assistance of Counsel

Petitioner's final set of claims involve numerous allegations of ineffective counsel from his trial court and appellate attorneys.   As mentioned *supra* in Part I.A, petitioner was represented in the trial court by Mr. Shane Hinch (hereafter, "Mr. Hinch") and in the appellate court by Mr. Carey J. Ellis, III (hereafter, "Mr. Ellis").

Ineffective assistance of counsel is a mixed question of law and fact.  *Triplett v. Johnson*, 158 F.3d 584, 584 (5th Cir. 1998) (citing *Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992)).

Therefore, petitioner must show that the state court's adjudication of his ineffective-assistance claim "resulted in a decision that was contrary to, or involved an unreasonable determination of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254 (d)(1).

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment; and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict.  *Id.* at 687.  This standard does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness.  *Id.* at 687–88.  "To prove prejudice, a petitioner must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008) (quoting *Strickland*, 466 U.S. at 694.

Petitioner raised the same claims of ineffective assistance of counsel in his postconviction relief application that he raises here.  2d. Supp. R. at 99–100; 143–151; *see also* doc. 1, att. 1, pp. 3–5.  Accordingly, because the state court has already addressed petitioner's ineffective-assistance claims, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland*'s standard."  *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).  Stated differently, when a state court has already heard a *Strickland* claim, this court

does not conduct a *de novo* review of the efficacy of petitioner's legal representation.   Our review is limited to whether the state court's determination of *Strickland* was unreasonable.

Here, the state court denied all of petitioner's claims ineffective assistance claims in a one-page order, stating that "a review of the record in this matter reveals that none of his claims are substantiated by the evidence." 2d Supp. R. at 152.  After independently reviewing the same claims, the undersigned concludes that the state court's blanket denial was reasonable because each of petitioner's ineffective-assistance claims lacks legal and factual support.  Specifically:

- Petitioner fails to show that, but for Mr. Hinch's failure to produce two persons to whom he alluded during his opening statement, the result of the trial would have been different;[6]

- Petitioner claims that Mr. Hinch should have objected to certain jurors who had inadvertently spoken with Chris Papillion (the nephew of victim John Papillion) during jury selection.[7]   However, the record reflects that the court specifically questioned the jurors who had spoken to Chris Pappillion and determined that their interactions with him were so negligible that the jurors could render an impartial verdict.  As such, the court itself undertook the action that petitioner claims Mr. Hinch should have sought by objecting to these jurors for cause.

- Similarly, petitioner claims that Mr. Hinch was ineffective because he failed to challenge certain jurors for their perceived connections to the Calcasieu Parish District Attorney's office.[8]   This argument lacks merit. All of these witnesses were examined during voir dire and found to be impartial.

- Petitioner's argues that Mr. Hinch was ineffective when he failed to advance a hearsay objection to Kenneth Farras being shown his prior videotaped statement.[9]  This argument lacks merit because refreshing a witness's memory via a videotape or writing is specifically allowed by Louisiana Code of Evidence article 803(5).  There was nothing constitutionally infirm in the use of the video here because Farras testified that he could not recall his earlier statement and the video was shown outside the presence of the jury.

- Petitioner's argument that Mr. Hinch failed to adequately cross-examine Arthur McNeil as to a prior inconsistent statement is misplaced.[10]   Petitioner

---

[6] See doc. 1, att. 1, pp. 24–28.
[7] *Id.* at 28–33 .
[8] *Id.* at 49–51.
[9] *Id.* at 33–36.
[10] *Id.* at 41–45.

alleges McNeil's statements to be inconsistent with those of petitioner; he fails to demonstrate any instance where McNeil himself stated two different things.

- Petitioner's argument that the trial judge issued an erroneous instruction regarding Pappillion's murder, and that Mr. Hinch should have objected to the instruction, is likewise without merit.[11]  The instruction was correct.  Insofar as Pappillion was killed during an armed robbery, the jury did not need to find specific intent to kill or inflict great bodily harm.  *See* La. R.S. § 14:30.1(A)(2).

- Petitioner's argument that Mr. Hinch should have moved for a mistrial based on various "prejudicial remarks" made during the state's closing argument also fails.[12]  Contrary to petitioner's protestations, the assistant district attorney's remarks were well within the permissible scope of closing argument permitted under Louisiana law.  *See* LA. CODE CRIM. PROC. art. 774. None of the bases for declaring a mistrial or admonishing defendant were implicated in the state's closing statement.  *See* LA. CODE CRIM. PROC. art 770.

- Finally, petitioner's arguments regarding his appellate attorney Carey Ellis wholly fail.[13]  Petitioner appears to be arguing that Mr. Ellis was ineffective simply because the appeal was unsuccessful.  However, he fails to point to any specific instance where Mr. Ellis's performance was deficient, or that the appellate court's holding would have been different were it not for the deficiency.

Based on the foregoing review of petitioner's claims and of the record, it was reasonable for the state court judge to summarily deny petitioner's ineffective-assistance claims.  As such, petitioner is not entitled to relief.

## IV. CONCLUSION & RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that the application for the writ of *habeas corpus* be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. Proc. 72(b), any party aggrieved by this Report and Recommendation has 14 days from its service to file specific,

---

[11] *Id.* at 36–38.
[12] *Id.* at 38–40; 46–49.
[13] *Id.* at 56–63.

written objections with the clerk of court.  A party may respond to another party's objections within 14 days after being served with a copy thereof.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation 14 days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Ass'n*, **79 F.3d 1415 (5th Cir. 1996).**

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  Within 14 days from the service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 6th day of August, 2014.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE